O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CACIQUE, INC.,<br>　　　　Plaintiff/Counter-Defendant,<br>　　v.<br>REYNALDO'S MEXICAN FOOD COMPANY, LLC,<br>　　　　Defendant/Counterclaimant. | Case No. 2:13-cv-1018-ODW (MLGx)<br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON TRADEMARK/TRADE DRESS CLAIMS [64]** |

## I.　INTRODUCTION

Before the Court is Defendant Reynaldo's Mexican Food Company, LLC's Motion for Summary Judgment on Trademark/Trade Dress Claims. (ECF No. 64.) The parties in this action are competitors in the Hispanic and Mexican-style cheese market. Plaintiff Cacique, Inc. alleges that Reynaldo's infringes its protected trademark and trade-dress rights in certain queso fresco labels. A hearing on the present Motion was held on January 27, 2014. For the reasons discussed below, the Court **DENIES** Defendant's Motion for Summary Judgment on Trademark/Trade Dress Claims. (ECF No. 64.)

## II.　FACTUAL BACKGROUND

Cacique manufactures and sells Hispanic and Mexican-style cheese and other products. (Compl. ¶ 8.) Reynaldo's is a direct competitor, and wholly owned by the same investors that own the Wisconsin Cheese Group. (ECF No. 19 at ¶ 12; ECF

No. 50, Bloom Decl. ¶ 4.) The Wisconsin Cheese Group is the third-largest Hispanic foods manufacturer in the United States. (ECF No. 79, Bloom Decl. ¶ 5.)

Cacique filed this action on February 12, 2013. (ECF No. 1.) The Complaint contains two claims for (1) infringement of a federally registered trademark and (2) infringement of unregistered trade dress rights and false designation of origin. (*Id.*) The claims allege that the labels on the Reynaldo's Queso Fresco infringe on the registered trademark and protected trade dress found on Cacique's Queso Fresco labels.

Cacique has a registered trademark on one version of its Queso Fresco label, U.S. Trademark Registration No. 3,745,734. (Supp. Leader Decl. Ex. 1.) The registration was issued on February 9, 2010. (*Id.*) According to the registration certificate, Cacique's first use of the mark was in 2001. (Supp. Leader Decl. Ex. 1.) The mark consists of the words "Cacique," "Ranchero," "Queso Fresco," and "Part Skim Milk Cheese" as they appear together inside a "stylized rope design with a design of a man on a burro followed by a man carrying goods." (*Id.*) No claim is made to the use of "Queso Fresco Part Skim Milk Cheese" separate and apart from the overall mark. (*Id.*) Color is not claimed as a feature of the registered mark. (Tobin Decl. Ex. 3.) The following is the image associated with the registered mark:



(Supp. Leader Decl. Ex. 1.)

Cacique describes its protected, but unregistered, trade dress in broader terms than its registered trademark. Specifically, Cacique claims exclusive rights in the following:

> (1) The "irregular-shaped basket" or "loaf-shaped" design framed in a stylized rope ("rope-loaf" design), (2) the human figure at the top of the label within the "rope-loaf" design, (3) the brand name in green lettering below the human figure, and (4) the generic cheese term in a red center banner with folded ends, with chevron shape at terminus.

(Compl. ¶ 9.) There are two versions of Cacique's labels that Cacique alleges fall under this protected trade dress. The first is "Cacique RANCHERO Queso Fresco" and the second is "Cacique Queso Fresco." The following are examples of these two labels:



(Supp. Leader Decl. Ex. 2; Compl. Exs. 1–2.)

The allegedly infringing label is only used for the Reynaldo's Queso Fresco. (Compl. ¶¶ 13–15; Stewart Decl. ¶2.) Cacique has been aware of the accused Reynaldo's label since at least September 2012, when it sent a cease-and-desist letter

to Reynaldo's. (Tobin Decl. Ex. C.) However, in the letter and the Complaint, Cacique states that the alleged infringement began sometime around April 2011. (*Id.*; Compl. ¶ 13.) The following are examples of the accused Reynaldo's label in different sizes:[1]

 

(Supp. Tobin Decl. Ex. A; Supp. Leader Decl. Ex. 3; Compl. Ex. 3.)

The instant Motion for Summary Judgment on Trademark/Trade Dress Claims was filed by Reynaldo's on December 16, 2013.[2] (ECF No. 64.) A hearing on the Motion was held on January 27, 2014, after which the matter was taken under submission.

---

[1] At the January 27, 2014 hearing on the instant Motion, counsel for Reynaldo's made much ado about the package size of the Reynaldo's Queso Fresco in the images submitted by Cacique in the Supplemental Declaration of Jon Leader. The Court notes that there is little to no difference in the labels of the Kilo and 10-ounce sizes of the Reynaldo's Queso Fresco. Both labels are used in the Mexican-style cheese market and thus compete with Cacique, so the Court places no real significance on the size of the queso fresco products.

[2] Cross-Motions for Summary Judgment on Counterclaim were also filed by the parties in this action. (ECF Nos. 41, 75.) The Cross Motions concern the breach-of-contract counterclaim brought by Reynaldo's. The Court issued a separate order on the Cross-Motions. (ECF No. 145.)

## III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

"Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) (citations omitted). Nevertheless, Reynaldo's moves for summary judgment on Cacique's two claims for registered trademark infringement and unregistered trade-dress infringement.

To prove its trademark infringement claim at trial, Cacique must establish that (1) it owns a valid, protectable mark, and (2) Reynaldo's uses or used a confusingly

similar mark. *Brookfield Comm., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046–47 (9th Cir. 1999). A confusingly similar mark is one that is "likely to produce confusion in the minds of consumers about the origin of goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

Cacique's trade dress claim requires Cacique to prove that (1) the trade dress is nonfunctional, (2) the trade dress is inherently distinctive or has acquired secondary meaning, and (3) there is a likelihood of consumer confusion. *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046–47 (9th Cir. 1998); *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d 1165, 1172–78 (C.D. Cal. 2010).

Both claims have a common element—likelihood of confusion. In the present Motion, Reynaldo's contends that Cacique cannot establish likelihood of confusion for either claim.[3] In addition, Reynaldo's argues that Cacique cannot prove sufficient secondary meaning to support its trade dress claim. The Court addresses each issue in turn.[4]

**A.  Likelihood of Confusion**

In the instant Motion, Reynaldo's focuses most of its attention on the likelihood-of-confusion requirement in both claims. Likelihood of confusion is a "mixed question of law and fact that is predominantly factual in nature." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), lays out an eight-factor test

/ / /

/ / /

---

[3] Reynaldo's presents no evidence disputing the validity of Cacique's registered trademark.

[4] The Court has reviewed the evidentiary objections lodged by the parties. To the extent that the Court relies upon evidence to which one or more parties have objected, the Court **OVERRULES** those objections. The evidence upon which the Court relies is relevant, within the declarants' personal knowledge, based on nonhearsay, and within the proper purview of opinion testimony under the Federal Rules of Evidence.

that courts apply when assessing likelihood of confusion.[5] The factors are (1) strength of plaintiff's mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care consumers are likely to exercise; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* No one factor is dispositive, nor is every factor applied in every case. *One Indus, LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1162 (9th Cir. 2009).

The parties agree that the last *Sleekcraft* factor—likelihood of expansion—is inapplicable to the case at bar since the parties are direct competitors. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir. 2011). The Court analyzes the remaining seven *Sleekcraft* factors below. The Court distinguishes between the trademark and trade-dress claims where necessary, but notes that for many of the factors, the analysis is identical.

### 1. Strength of Mark

In analyzing the first *Sleekcraft* factor, courts assess both the conceptual and commercial strength of the mark. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080–81 (9th Cir. 2005). Trademarks are categorized along a spectrum. Generic or descriptive marks are weaker, whereas arbitrary or fanciful marks have more conceptual strength. *Id.* A mark's commercial success can serve to bolster the strength of a mark that may be conceptually weaker. *Id.* at 1081.

Reynaldo's argues that Cacique's registered trademark and its asserted trade dress are not conceptually strong, explaining that the individual elements in Cacique's labels are merely generic and descriptive. (*E.g.*, Mot. 17:19–28.) Reynaldo's also contends that Cacique's commercial strength arguments should be taken with a grain of salt because they rely entirely on expert-witness conclusions. (Mot. 19:10–20:8.) On the other hand, Cacique argues that the Court cannot look at the individual

---

[5] The *Sleekcraft* factors apply to trademark and trade dress infringement claims under federal, state, and common law. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005). Thus, the factors apply to the likelihood of confusion analysis for both of Cacique's claims here.

elements on the labels, but must instead consider the registered trademark and the trade dress as a whole. (Opp'n 17:21–19:27.) Cacique also points to its commercial success and the many years that the subject labels have been on the market to support the strength-of-mark factor. (*E.g.*, Opp'n 7:22–8:23.)

While Reynaldo's would have the Court analyze the strength of the individual elements of Cacique's registered trademark and asserted trade dress, this individualized approach is contrary to the law. "[T]he validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993). Thus, the court must look at the elements of Cacique's trademark and trade dress in combination.

Reynaldo's points to the labels of other competitors in the cheese market to demonstrate that they too use rope borders. (Fischer Decl. Exs. A–F.) But the distinction is in the shape of the rope border, along with the other elements found on Cacique's labels. The other labels proffered by Reynaldo's do not include the same placement of a "human figure" within the rope border and above the brand name. Moreover, with respect to the trade dress, the color scheme is also distinctive. It is true that red and green are the colors of the Mexican flag, but Cacique has carefully chosen which elements contain those colors.

Overall, the Court acknowledges that the registered trademark and trade dress do not quite rise to the level of arbitrary or fanciful. Many of the elements, such as the rope border and the human figures above the brand name appear to be intended to identify the products as Hispanic or Mexican in origin. Nevertheless, reviewing the evidence in the light most favorable to the non-moving party, the Court finds that Cacique's labels are not merely generic or descriptive. The specific shape of the rope border and the exact placement of a human figure above the brand name are distinguishable from other labels. In addition, ropes and the human figures depicted

/ / /

in Cacique's labels do not directly relate to cheese. Cacique's trademark and trade dress therefore fall somewhere in the middle of the conceptual strength spectrum.

But the strength-of-mark inquiry continues because Cacique has supplied evidence of the commercial strength of both the registered trademark and the asserted trade dress. First, Cacique notes that the labels at issue have been in the marketplace for twelve years, which is a significant amount of time. (Supp. Leader Decl. Ex. 1.) Cacique is also a major brand name in the Hispanic and Mexican-style cheese market. Cacique's proffered expert, David Stewart, has analyzed sales data and information on Cacique's advertising and marketing, concluding that this information demonstrates Cacique's labels are recognizable in the market. (*E.g.*, Stewart Decl. ¶¶ 7–9.) For example, Stewart opines that $5 million in advertising expenditures in a niche market like that of Mexican-style cheese is significant. (*Id.* ¶ 8.) Of course, Reynaldo's has its own expert who opines to the contrary. (Tobin Decl. Ex. E.)

The Court finds that declaring a winner in this battle of the experts is premature at the summary-judgment stage. Again, viewing the evidence in the light most favorable to the non-moving party, the Court determines that the first *Sleekcraft* factor—strength of mark—does not weigh in favor of Reynaldo's. But the Court is also not willing to decide that this factor favors Cacique.

### 2. Proximity of Goods

The second *Sleekcraft* factor assesses whether the goods are related or complementary. *M2 Software*, 421 F.3d at 1081–82. "Where the goods are related or complementary, the danger of confusion is heightened." *Id.* at 1082. In this case, it is clear that this factor favors Cacique and a finding of likelihood of confusion. The goods at issue—queso fresco—are virtually identical. It is the same type of Mexican-style cheese, and both parties sell their products in vacuum-sealed, clear, plastic-wrap packaging. Reynaldo's concedes that this factor does not work in its favor. (Mot. 22.)

/ / /

/ / /

### 3. Similarity of Marks

The similarity between the Cacique trademark and trade dress and the allegedly infringing Reynaldo's label is critical in the likelihood-of-confusion analysis. *See, e.g.*, *M2 Software*, 421 F.3d at 1082. "Similarity of marks is assessed in terms of their sight, sound, and meaning." *Id.* (internal quotation marks omitted). Moreover, like in the strength-of-mark analysis, a trademark is not judged by its parts, but rather viewed "as a whole, as it appears in the marketplace." *Official Airline Guides*, 6 F.3d at 1392.

First, the Court notes the distinction between Cacique's registered trademark and its asserted trade dress. Both share many of the same elements, such as the loaf-shaped rope border. But color is expressly disclaimed in the trademark registration. (Supp. Leader Decl. Ex. 1.) To the extent that the Court considers color in its analysis, it applies only to Cacique's trade-dress claim.

Reynaldo's argues that the dominant and distinctive features of Cacique's trademark and the labels that fall under its asserted trade dress are the literal elements—"Cacique Ranchero Queso Fresco Part Skim Milk Cheese," "Cacique Ranchero Queso Fresco," and "Cacique Queso Fresco." (Mot. 14:3–10.) According to Reynaldo's, its Reynaldo's brand name is immediately distinguishable from Cacique's literal elements. (*Id.*) Reynaldo's also points out that the "human figures" at the top of both the Cacique labels and the Reynaldo's label are different. (Mot. 14:20–27.) Cacique's label includes a woman on a burro with a man following behind, while the Reynaldo's label includes a man wearing a sombrero. (*Id.*) Moreover, Reynaldo's emphasizes gradations in color in the background of its label as well as the use of the same red and green colors on other Mexican cheese products. (Mot. 14:28–15:8.) The rope borders are also different colors, and Reynaldo's places significance on the different number of intervals in the rope borders, which is where certain emblems are placed. (Mot. 15:9–21.)

On the other hand, Cacique argues that the competing labels are similar for several reasons, including the label size, font scale, the location of brand names, and

1 use of a nearly identical ribbon motif. (Opp'n 10.) In terms of its trade-dress claim,
2 Cacique also points out that the use of color in the brand names and ribbon motif are
3 also identical. (Opp'n 10.)

A side-by-side comparison of the labels at issue is helpful to the analysis:

**Cacique's Registered Trademark**         **Reynaldo's Label**




**Cacique Trade Dress Labels and Reynaldo's Labels**



28 (Supp. Leader Decl. Exs. 1–3.)

Cacique's labels include large lettering for the brand name immediately below a half-tone drawing of characters intended to be identified as Mexican in heritage. The Reynaldo's label is similar with large brand-name lettering below a half-tone drawing of a character in traditional Mexican dress. Both labels also include a red ribbon motif below the brand name. While Reynaldo's has repeatedly emphasized the distinction in the shape of the ribbons, it took the Court several minutes to recognize this apparent distinction. A reasonable consumer in the grocery aisle is unlikely to pause for that length of time.

In terms of the trade dress, the brand-name lettering is also in an identical shade of green. Cacique's "Ranchero" brand is in green, while the Reynaldo's name is in green. Both are also in similar fonts and sizes and, notably, both start with the letter "R." Overall, the Court finds sufficient evidence of similarity between Cacique's labels and the Reynaldo's labels to create a triable issue.

Reynaldo's cites several cases where courts have found no likelihood of confusion at the summary-judgment stage. In *One Industries*, the Ninth Circuit found the competing marks on motocross helmets dissimilar, but unlike here, the Court found the dissimilarity more pronounced because of the location of the marks on the helmets. 578 F.3d at 1163. Here, the marks at issue make up almost the entire label of both the Cacique and Reynaldo's products. In addition, the consumers in that case were found to be more attentive and discerning, than the consumers of the much less expensive queso fresco at issue here. *Id.*; *see also* Part IV-A(6). Moreover, in *Kendall-Jackson Winery*, the Ninth Circuit found that there was no jury question with respect to the depiction of grape leaves on two competing wine bottles. 150 F.3d at 1049. But here, the Court finds that the content on the labels at issue, such as a rope border and the location of the human figures, is more distinctive than that of a grape leaf on a wine bottle. Wine comes from grapes. The connection between the elements on the labels here and cheese is more attenuated.

/ / /

Overall, while noting that the Cacique and Reynaldo's labels are not identical, the Court finds that the similarity of the marks slightly favors Cacique.

### 4. Actual Confusion

Cacique concedes that it has not proffered evidence of actual confusion. (Opp'n 16:7–10; ECF No. 119 at ¶ 38.) Reynaldo's argues that this absence of actual-confusion evidence is a powerful indication that there is no likelihood of confusion here. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842–43 (9th Cir. 2002). Reynaldo's emphasizes that the competing labels have been in many of the same stores for at least two years, yet Cacique has not shown a single instance of actual confusion. (Mot. 21:3–14.) But evidence of actual confusion can often be hard to obtain and "is *not* dispositive against a trademark plaintiff." *Brookfield Comm., Inc. W. Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999).

Overall, the Court finds this factor tips in favor of Reynaldo's and a finding that there is no likelihood of confusion. Like in *Cohn*, where the parties "used the same trademark in the same city for six years to market closely-related goods and services," the Cacique and Reynaldo's labels have been used on the same products in the same stores for at least two years. 281 F.3d at 842–43. But the Court does not place as much weight on this factor as Reynaldo's does, because of the nature of the goods at issue in this case. The cases cited by Reynaldo's involved goods and services that were more expensive, and consumers were likely to be more attentive. *See id.* (infringement claims involving veterinary clinic and national pet store chain); *Matrix Motor*, 290 F. Supp. 2d at 1095 (plaintiff alleged infringement of mark on racing cars).

### 5. Marketing Channels Used

Reynaldo's concedes that the parties use the same marketing channels to sell their brands of queso fresco. (Mot. 22.) "Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. This factor favors Cacique.

### 6. Type of Goods and Degree of Care

Reynaldo's also concedes that the sixth *Sleekcraft* factor—the type of goods and degree of care that a consumer is likely to exercise—is either neutral or favors Cacique. (Mot. 22.) The goods are identical. Moreover, consumers are unlikely to spend time and effort distinguishing between the two products because cheese is not a big ticket item. "[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely." *Brookfield Comm.*, 174 F.3d at 1060; *see also E.& J. Gallo Winery*, 967 F.2d at 1293 (upholding district court finding that consumers exercise less care when purchasing cheaper items such as wine and cheese). The Court holds that this factor clearly favors Cacique and supports a finding of likelihood of confusion.

### 7. Defendant's Intent in Selecting Mark

The seventh *Sleekcraft* factor considers whether there is any evidence that Reynaldo's intended to adopt a similar mark. A lack of intent evidence, however, is not fatal to Cacique's claims. *E. & J. Gallo Winery*, 967 F.2d at 1293. But evidence of intent can be powerful. If an alleged infringer knowingly adopts a similar mark, a court must presume that the public will be deceived. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 637 (9th Cir. 2007).

Reynaldo's concedes that it was aware of Cacique's label elements, but it argues that is not enough to show that Reynaldo's knowingly adopted the elements of Cacique's label. (Mot. 21:15–28.) Cacique, however, points to internal marketing memoranda from individuals at the Wisconsin Cheese Group regarding the creation of a new Reynaldo's label. (Stewart Decl. ¶ 11, Ex. 2.)[6] According to Cacique, these

///

---

[6] The only objections made by Reynaldo's to the internal memoranda are premised on Federal Rules of Evidence 701, 702, and 801. The Court is not relying on the expert's opinion in its analysis, and the Court finds that these memoranda are not hearsay under Federal Rule of Evidence 801(d)(2). Therefore, those objections are **OVERRULED.** Since no other objections were raised, the Court considers the evidence in its analysis.

communications demonstrate that Reynaldo's tried to imitate Cacique's labels. (Opp'n 14:3–10.)

The Court finds that the fact Reynaldo's was aware of the Cacique labels, coupled with the internal memoranda, presents a jury question as to whether there was intent to copy or imitate the labels. The Court does not believe the internal memoranda are strong evidence of intent, but a reasonable juror could make the inference. Since the Court concludes that this factor is inconclusive at this stage, it weighs against summary judgment in favor of Reynaldo's.

Having considered all of the relevant *Sleekcraft* factors, the Court determines that most of the factors either favor Cacique, or are too close to assess in favor of Reynaldo's at summary judgment. The evidence presents a triable issue on likelihood of confusion.

**B.  Inherent Distinctiveness or Secondary Meaning**

To succeed on its trade-dress claim, Cacique must also prove that its asserted trade dress is "inherently distinctive or has acquired secondary meaning." *Kendall-Jackson Winery*, 150 F.3d at 1046–47. Consideration of this prong of the trade-dress claim is similar to the strength-of-mark analysis above. Distinctiveness and secondary meaning are essentially interchangeable terms for this element of the trade-dress claim. "The basic element of secondary meaning is [ ] the mental association by a substantial segment of consumers and potential consumers between the alleged mark and a single source of the product." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985).

Reynaldo's folded the secondary meaning analysis into its arguments regarding the strength of Cacique's trademark and trade dress. (Mot. 18:19–10:23.) But the Court writes separately, for clarity's sake, since it is a distinct element of Cacique's trade dress. Much of the same evidence proffered by Cacique regarding the conceptual and commercial strength of its labels and products are used to support a finding of secondary meaning. (*E.g.*, Opp'n 11:17–24.) Since the Court has already

found that the battle of the experts should not be decided at the summary-judgment stage with respect to sales data and advertising, the Court finds that a triable issue exists as to secondary meaning. *See* Part IV-A(1).

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendant's Motion for Summary Judgment on Trademark/Trade Dress Claims. (ECF No. 64.)

**IT IS SO ORDERED.**

February 10, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**